IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**CITY OF HOLLY SPRINGS**                                                                    **PLAINTIFF**

**VS.**                                                            **CIVIL ACTION NO. 3:20-CV-205-M-P**

**JOHNSON & JOHNSON, et al**                                                        **DEFENDANTS**

### ORDER

This cause comes before this court on the motion of plaintiff City of Holly Springs, Mississippi to remand this case to the Circuit Court of Marshall County. Defendants have responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, concludes that the motion is well taken and should be granted.

This action is one of thousands of related lawsuits filed against manufacturers and distributors of FDA-approved prescription opioid medications on behalf of state and local governments and others relating to alleged harms stemming from abuse of these medications. On July 20, 2020, defendants Endo Health Solutions Inc. and Endo Pharmaceuticals Inc. (collectively, "Endo") removed this case from the Circuit Court of Marshall County, Mississippi on the basis of diversity jurisdiction. The assertion of diversity jurisdiction in this case strikes this court as being quite aggressive, considering that Endo concedes that five defendants in this case—Liddy Pharmacy, Tyson Pharmacy, Robinson Pharmacy, Cassandra Hawkins, M.D., and Byhalia FamilyHealth Center—are non-diverse. Thus, it is uncontested that complete diversity of citizenship is lacking on the face of the complaint, and, yet, diversity of citizenship is the only purported basis for removing this case to federal court.

In asserting that federal jurisdiction nevertheless exists, defendants argue that the citizenship of the non-diverse medical providers and pharmacies should be ignored because they are subject to severance under Rule 21 and because they have been fraudulently misjoined. Importantly, however, defendants make it clear that they do not actually desire a ruling from this court on whether it has jurisdiction over this case. To the contrary, defendants seek for this court to essentially sit back and do nothing, secure in the knowledge that a federal MDL court will soon take this case off its docket. [Notice of removal at 3. "Though any motion to remand would be without merit, all remand questions should be resolved by the MDL court."]

An MDL court has, in fact, issued a conditional transfer order in this case, and while a final transfer order has not been entered, it seems highly likely based on this court's prior experience that, if this case is not remanded, it will eventually be transferred to the MDL court. A brief word about the MDL history of this case is in order. On December 5, 2017, the Judicial Panel on Multidistrict Litigation created a Multidistrict Litigation ("MDL") in the Northern District of Ohio for cases in which "cities, counties and states . . . allege that: (1) manufacturers of prescription opioid medications overstated the benefits and downplayed the risks of the use of their opioids and aggressively marketed . . . these drugs to physicians, and/or (2) distributors failed to monitor, detect, investigate, refuse and report suspicious orders of prescription opiates." *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1378 (J.P.M.L. 2017).

For jurisdiction purposes, the most important point for this court is that the MDL court is a *federal* court, and, if federal jurisdiction is lacking, then an MDL court likewise has no jurisdiction to hear this matter. Moreover, while defendants argue that the court should stay its ruling on the motion to remand, plaintiff urges that it be ruled upon expeditiously since federal jurisdiction is lacking and, if it is transferred to the MDL court, a ruling on the motion to remand

by the MDL court could take years, if it ever occurs. Indeed, a South Carolina district court noted in 2018 that "[t]he MDL Court has issued a moratorium on all substantive filings, including motions to remand, and has indicated that it is not going to rule on any pending motions to remand at the present time." *County of Anderson v. Rite Aid of S.C., Inc.,* 2018 WL 8800188, at *2 (D.S.C. Aug. 20, 2018). In its motion to remand, plaintiffs argue that this moratorium remains in effect, and defendants do not contest this assertion in their response. [Plaintiff's brief at 1, citing Order Regarding Remands, In re National Prescription Opiate Litigation, MDL 2804 (N.D. Ohio Feb. 16, 2018).]

As discussed below, this court concludes that federal jurisdiction is lacking in this case, and it can discern serious fairness issues with a system whereby state court actions are improperly removed to federal court and then transferred to a federal court which has issued a moratorium on ruling on remand motions. This court believes that this is a situation which should be avoided if possibile, and it has the ability to do so here. In so stating, this court notes that it has the authority to rule on pending motions at any time until the JPML issues a transfer order. *Stephens v. Kaiser Found. Health Plan of the Mid-Atl. States, Inc*., 807 F. Supp. 2d 375, 381 (D. Md. 2011) (*quoting Moore v. Wyeth–Ayerst Labs*., 236 F. Supp. 2d 509, 511 (D. Md. 2002)). Indeed, the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation expressly provide that a conditional transfer order "does not affect or suspend orders and pretrial proceedings in any pending federal district court action and does not limit the pretrial jurisdiction of that court." R. Proc. J.P.M.L. 2.1(d).

The district court in *Stephens* observed that "motions to remand are particularly appropriate for resolution by this court" because if it "does not have jurisdiction over th[e] matter, then neither will the MDL court." *Stephens*, 807 F.Supp.2d at 381. Consistent with this view, several federal

3

district courts have recently granted motions to remand similar opiod cases before the JPML could transfer them to the MDL court.[1] Typical of these decisions is *County of Falls v. Purdue Pharma, LP*, in which a Texas district court rejected misjoinder arguments in an opiod case, writing that:

> This case does not present the sort of extreme case for which fraudulent misjoinder is reserved. Falls County has asserted five causes of action against both the Manufacturer and Distributor Defendants. As discussed above, the claims against each set of defendants are hardly wholly distinct or lacking any real connection; on the contrary, they raise a host of common factual and legal issues. The Court therefore finds that Falls County did not fraudulently misjoin the Manufacturer Defendants and declines to sever the county's claims against them on that basis.

*County of Falls*, No. 6:18-CV-47-RP-JCM, 2018 WL 1518849, at *4 (W.D. Tex. Mar. 28, 2018). Similarly, a Maryland district court recently rejected severance and misjoinder arguments in an opiod case, finding that "the County's claims against the Prescriber Defendants are factually and legally intertwined with its claims against the Manufacturer and Distributor Defendants." *Anne Arundel County, Maryland v. Purdue Pharma L.P.*, No. CV GLR-18-519, 2018 WL 1963789, at *5 (D. Md. Apr. 25, 2018).

For its part, this court is not irrevocably opposed to having an MDL court decide remand issues, particularly if there appears to be a strong argument for federal jurisdiction in a particular case. In such cases, there is, in fact, benefit to be gained by having a single federal court rule upon remand issues, so as to avoid inconsistent results among federal courts. In cases where federal

---

[1] *See, e.g. Estate of Brockel v. Purdue Pharma L.P.,* et al., 1:17-cv-00521-KU-MU, slip op. at 1 (S.D. Ala. Mar. 29, 2018); *Cty. of Delta v. Purdue Pharma L.P.*, et al., 4:18-cv-00095-ALM, slip op. at 9 (E.D. Tex. Mar. 22, 2018); *Cty. of Dallas v. Purdue Pharma L.P., et al.,* 3:18-cv-00426-M, slip op. at 7 (N.D. Tex. Mar. 7, 2018); *Brooke Cty. Comm'n, et al. v. Purdue Pharma L.P.*, et al., 5:18-cv-00009, slip op. at 17 (N.D.W. Va. Feb. 23, 2018) (granting Motions to Remand in eight cases brought by counties in West Virginia); *New Hampshire v. Purdue Pharma, et al.,* 1:17-cv-00427-PB, 2018 WL 333824, at *4 (D.N.H. Jan. 9, 2018); *Cty. of Hopkins v. Endo Health Solutions Inc., et al.,* 4:17-cv-00845-ALM, slip op. at 2 (E.D. Tex. Dec. 20, 2017); *Staubus v. Purdue Pharma, L.P., et al.,* 2:17-cv-122-TAV-CLC, 2017 WL 4767688, at *8 (E.D. Tenn. Oct. 20, 2017).

jurisdiction is clearly lacking, however, this court believes that it has a duty to prevent a misuse of the removal process in order to create a lengthy detour into a federal MDL court and deprive a state court of the jurisdiction which rightfully belongs to it. This court concludes that this is one such case in which jurisdiction is clearly lacking, for reasons which it will presently explain.

There are several non-diverse defendants in this case, and, as noted previously, defendants' arguments that federal jurisdiction exists are based on severance and fraudulent misjoinder theories which this court finds to be unavailing in this case. As to the severance issue, defendants write in their Notice of Removal that:

> Even where the face of a complaint shows a lack of complete diversity, removal based on diversity jurisdiction is nonetheless proper where non-diverse defendants are severable under Federal Rule of Procedure 21. Defendants are severable under Rule 21 if they are either unnecessary or dispensable under Rule 19, or if the claims against them are sufficiently distinct from claims against other defendants under Rule 20. Here, the non-diverse Pharmacy and Medical Provider Defendants should be severed on both grounds, each of which preserves diversity jurisdiction as to the Manufacturer and Distributor Defendants.

[Notice of Removal at 10]. In the court's view, defendants' severance arguments are circular, since it only has the authority to sever cases over which it has jurisdiction. Thus, for this court to consider Rule 21 severance arguments before deciding whether it even has jurisdiction over the case is putting the cart before the horse. True enough, severance may be available as a *remedy* in cases where a fraudulent misjoinder is found which gives rise to federal jurisdiction, but a court must, once again, have jurisdiction over a case before it can sever it.

In arguing that Rule 21 severance is effectively a removal doctrine, defendants cite no federal appellate precedent, and they instead rely upon a handful of district court opinions which this court does not believe withstand close scrutiny. For example, in a 2010 decision, a Louisiana district court wrote that:

5

> Plaintiffs argue that because some of the plaintiffs are not diverse and others do not meet the minimum jurisdictional threshold, the entire case must be remanded to Natchitoches Parish. However, FRCP 21 provides that the court may "drop" a party on any terms that are just. Since this provision is found in the Rule governing misjoinder, one might reason that the provision only applies where a party is found to have been misjoined. The courts have not limited its application to cases of misjoinder and I find the provision to be applicable to this case where all parties are dispensable.

*Birdwell v. XTO Energy, Inc.*, 2010 WL 517909, at *2 (W.D. La. Feb. 10, 2010). In a footnote, however, the only decision which the *Birdwell* court cited in support of its assertion that "courts" have applied Rule 21 severance outside of the misjoinder context is the Supreme Court's decision in *Newman-Green, Inc. v. Alfonzo-Larrain, et al*, 490 U.S. 826, 109 S. Ct. 2218, 104 L. Ed. 2d 893 (1989). In reality, however, *Newman-Green* was not a removed case at all, but was one which was *originally filed in federal court*. *Newman-Green*, 490 U.S. at 828 ("Petitioner Newman–Green, Inc., an Illinois corporation, brought this state-law contract action in District Court . . ."). It is thus plain that *Newman-Green* does not constitute authority for removing a case from state court, and this court concludes that the district court in *Birdwell* erred in treating it as such.

It seems clear to this court that, in order to remove a case involving non-diverse parties on the basis of diversity jurisdiction, a defendant needs an actual *removal doctrine*, such as fraudulent joinder or fraudulent misjoinder. As defendants note in their brief, the requirements for obtaining severance under Rule 21 are not particularly difficult to meet, and it seems likely that, if district courts allowed removal in every case in which severance was available, then they would be flooded with removals. As discussed below, the Fifth Circuit has stopped short of expressly adopting the fraudulent misjoinder doctrine at all, and it greatly limited the fraudulent joinder doctrine in its 2004 decision in *Smallwood v. Illinois Cent. R. Co.,* 385 F.3d 568, 571 (5th Cir. 2004). In the court's view, it defies reason to suggest that the same Fifth Circuit which has been so cautious

6

about expanding removal jurisdiction would choose to open the floodgates to removals by treating Rule 21 itself as a basis for removing a case involving non-diverse parties to federal court.

This court finds therefore defendants' reliance upon Rule 21 as a basis for removing a case to be improper, and it regards their fraudulent misjoinder theory as presenting the proper context in which to decide the jurisdictional issues in this case. Fraudulent misjoinder was first recognized as a basis for diversity jurisdiction by the Eleventh Circuit Court of Appeals in *Tapscott v. Miss. Dealer Serv. Corp.,* 77 F.3d 1353 (11th Cir. 1996). In adopting the doctrine, the Eleventh Circuit wrote that:

> Misjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action. A defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy."

*Tapscott*, 77 F.3d at 1360, *citing Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 97, 42 S.Ct. 35, 37, 66 L.Ed. 144 (1921).

In so writing, the Eleventh Circuit took care to emphasize that "[w]e do not hold that mere misjoinder is fraudulent joinder, but we do agree with the district court that Appellants' attempt to join these parties is so egregious as to constitute fraudulent joinder." *Tapscott*, 77 F.3d at 1360. Thus, "egregious" was, and has remained, the watchword for determining whether a particular misjoinder was so improper as to constitute fraudulent misjoinder. It seems clear to this court that avoiding *Tapscott*'s "egregious" standard is the reason why defendants seek to entice it into analyzing the federal jurisdiction issues in this case under a garden-variety Rule 21 standard, but such would be improper. Indeed, this court notes that most federal circuits have not even adopted

7

the *Tapscott* misjoinder theory at all,² and they certainly do not recognize federal jurisdiction under the much more lenient analysis which would apply if Rule 21 set forth the governing standards in this context.

For its part, the Fifth Circuit has stopped short of adopting the fraudulent misjoinder doctrine, but it has clearly made favorable references to it. In *In re Benjamin Moore & Co.,* 309 F.3d 296 (5th Cir. 2002), for example, the Fifth Circuit wrote, in considering a case involving "seventeen plaintiffs ... who have nothing in common with each other," that "it might be concluded that misjoinder of plaintiffs should not be allowed to defeat diversity jurisdiction." For the most part, however, the Fifth Circuit's jurisprudence regarding fraudulent misjoinder is very sparse, and it has largely been left to Mississippi district courts to define the scope of the doctrine. Most district courts in this state have read *Benjamin Moore* as an indication that the Fifth Circuit would adopt the fraudulent misjoinder doctrine in an appropriate case, and they have accordingly tended to treat it as a potential ground for jurisdiction. A notable exception is Judge Brown, who recently declined to recognize fraudulent misjoinder as a basis for jurisdiction based on her conclusions that "the removal statute must be strictly construed" and that there is no "clear guidance from the Fifth Circuit or the United States Supreme Court on the application of the fraudulent misjoinder doctrine." *See Wilson v. State Farm Mut. Auto. Ins. Co.,* No. 4:17-cv-124, 2018 WL 1096836, at *2 (N.D. Miss. Feb. 28, 2018).

Judge Brown's view is a minority one among district judges in this circuit, but even the district courts which recognize the fraudulent misjoinder doctrine have tended to emphasize, as the Eleventh Circuit did in *Tapscott*, that it should only apply in cases of truly egregious

---

² *See e.g. Palmer v. Davol, Inc.*, 2008 WL 5377991, *2 (D.R.I. Dec. 23, 2008) (discussing cases considering *Tapscott* and concluding that "federal courts ... have not given the doctrine a ringing endorsement.").

8

misjoinder. In the 2009 decision of *Cooper v. AIG Claim Servs., Inc*., 2009 WL 279101, at *2 (N.D. Miss. 2009), for example, Judge Aycock wrote that "[f]or this court to accept jurisdiction despite the misjoinder of a non-diverse defendant, the misjoinder must be egregious or grossly improper." Judge Barbour similarly wrote in *Sweeney v. Sherwin Williams Co.,* 304 F.Supp.2d 868, 872 (S.D. Miss. 2004) that "[t]o constitute fraudulent misjoinder, the misjoinder must represent totally unsupported, or egregious misjoinder." For its part, this court has likewise written that:

> Assuming arguendo that the Fifth Circuit would explicitly adopt the Tapscott rationale in an appropriate case, this court would only be able to accept jurisdiction based on the misjoinder of either plaintiffs or defendants if such misjoinder were "egregious." It is thus apparent that, for *Tapscott* to be applicable, this court would be required to find a level of misjoinder that was not only improper, but grossly improper.

*Walton v. Tower Loan of Miss*., 338 F.Supp.2d 691, 695 (N.D. Miss. 2004). This court wrote extensively regarding its views relating to the fraudulent misjoinder doctrine in *Boddie v. Walker*, 312 F. Supp. 3d 541, 542–44 (N.D. Miss. 2018), and it continues to believe that the fraudulent misjoinder doctrine has its place, but only in rather extreme cases of misjoinder.

With the foregoing considerations in mind, this court agrees with the numerous district courts which have concluded that allegations that doctors and pharmacists either knowingly or tacitly worked together with drug companies to profit from patients' opiod addictions does not present a case of egregious misjoinder so as to give rise to federal jurisdiction. This court has previously quoted the conclusion of the district court in *Anne Arundel County* that "the County's claims against the Prescriber Defendants are factually and legally intertwined with its claims against the Manufacturer and Distributor Defendants," *id.*, and this conclusion is hardly a unique one. A Maryland district court rejected similar misjoinder arguments in a 2018 decision, finding that "it is clear that the City's claims against the [Prescribing] Defendants are logically related to

9

its claims against the Manufacturer and Distributor Defendants." *Mayor & City Council of Baltimore v. Purdue Pharma L.P.*, 2018 WL 1963816, at *5 (D. Md. Apr. 25, 2018). That same year, a South Carolina district court rejected arguments that prescribing doctors and pharmacists were fraudulently misjoined with opiod manufacturers, finding that the claims against all defendants "clearly have a logical relationship to one another and arise from the same or substantially related series of transactions and occurrences." *County of Anderson,* 2018 WL 8800188, at *6 (D.S.C. Aug. 20, 2018). This court finds these observations to be equally applicable in this case.

In finding defendants' misjoinder arguments to not be well taken, this court emphasizes that the main focus of the very lengthy complaint in this case is not on the manufacture or design aspects of the supply of opiods to consumers. If that were the case, then defendants might have a more credible argument that the claims against the local doctors and pharmacists were misjoined with those against the opiod manufacturers.[3] Rather, the main thrust of the complaint in this case is that there was a symbiotic relationship between drug manufacturers and local doctors and pharmacies, pursuant to which they sought to work together for their mutual financial benefit by promoting the excessive use of opiods. By focusing on the promotion of the use of opiods, plaintiffs raise allegations as to which there is greater similarity among the alleged actions of the various defendants than in the typical case in which a retailer is joined in a products liability action. True enough, the diverse manufacturers played a different role in the supply chain than the non-diverse doctors and pharmacies, but the complaint alleges that they were motivated by a similar state of mind, namely a willingness to overlook the harm caused by the oversupplying of opiods

---

[3] Even in this scenario, however, defendants would still be confronted with *Tapscott*'s "egregious" standard, which is, once again, an exceedingly difficult one to meet.

10

to consumers, in the interest of profits. That being the case, this court does not regard the fact that the various defendants played different roles in supplying opiods to consumers as precluding their lawful joinder under Rule 20, and it certainly does not consider that joinder to be sufficiently "egregious" to give rise to federal jurisdiction under *Tapscott*.

As a final note, this court observes that defendant Walgreen Boots Alliance, Inc. filed a supplemental notice of removal, in which it argued that the Class Action Fairness Act (CAFA) provides an additional basis for removing this case. This court rejects this alleged basis for removal, since Holly Springs has not asserted a class-based claim in this case and, instead, seeks to recover damages for itself. A number of district courts have rejected similar arguments in opiod cases containing complaints very similar to the one here, and this court believes that they were correct in doing so. *See, e.g. City of Las Vegas v. Purdue Pharma, L.P.,* 2020 WL 223614, at *5 (D. Nev. Jan. 15, 2020)("Because the city is pursuing—and will only be able to recover—its own damages, this case is not a class action and does not fall within the purview of CAFA."); *Town of Randolph v. Purdue Pharma L.P.*, No. 19-CV-10813-ADB, 2019 WL 2394253, at *4 (D. Mass. June 6, 2019)("The Complaint only claims losses suffered by Plaintiff and omits both class-specific allegations and a definition of a proposed class.") This court therefore joins the district courts which have rejected this creative, yet ultimately unavailing, theory for removing opiod cases filed by municipalities, and it finds that none of the alleged bases for federal jurisdiction in this case withstand scrutiny.

In their briefing, defendants concede that the jurisdictional issues in this case are virtually identical to those in numerous other opiod cases, and while they argue that this counsels in favor of having the MDL court decide all remand issues, this court does not agree. In the court's view, if federal jurisdiction is lacking in this case, then it makes little sense to transfer this case to a

11

federal MDL court, where any motion to remand will likely languish on the docket for years. Reading between the lines of defendants' motion, it appears that such a lengthy delay is precisely what they hope to obtain by removing this case, and this court can certainly understand why this prospect would be attractive to them. At the same time, ascertaining that this court actually has jurisdiction over a case is one of its fundamental responsibilities, and, in cases where it seems clear that this jurisdiction is lacking, it would be wrong to simply pass that case on to another federal court. For the reasons previously stated, this court agrees with the numerous federal judges who have found federal jurisdiction to be lacking in very similar opiod cases, it concludes that the motion to remand is due to be granted.

In light of the foregoing, this court concludes that diversity of citizenship is lacking in this case, and plaintiff's motion to remand it to the Circuit Court of Marshall County is hereby granted.

So ordered, this the 6th day of August, 2020.

/s/ Michael P. Mills
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**